UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GUARD INSURANCE GROUP, INC.,
as assignee of Scott Baxter,

                               Plaintiff,

                                                                       DECISION AND ORDER

                                                                       11-CV-6254L

                               v.

TECHTRONIC INDUSTRIES CO., LTD.,
TECHTRONIC INDUSTRIES NORTH AMERICA, INC.,
ONE WORLD TECHNOLOGIES, INC.,
RYOBI TECHNOLOGIES, INC.,
HOME DEPOT U.S.A., INC.,

                               Defendants.
_____

**INTRODUCTION**

Guard Insurance Group ("Guard"), as assignee for Scott Baxter ("Baxter"), brings this action against Techtronic Industries Co., Ltd., Techtronic Industries North America, Inc., One World Technologies, Inc., Ryobi Technologies, Inc., and Home Depot, USA, Inc. ("Home Depot"). Guard, which was at all relevant times the workers' compensation insurer for Baxter's employer, asserts product liability and negligence claims arising from personal injuries sustained by Baxter while he was using a table saw ("the saw") designed, manufactured and/or distributed by defendants. Guard seeks, *inter alia*, reimbursement for insurance payments that it made to Baxter under the relevant worker's compensation policy.

On March 14, 2013, the Court issued a Decision and Order (Dkt. #29) denying defendants' motion to dismiss, which was based on limitations and other procedural grounds, and directed the Clerk to amend the caption to list the plaintiff as "Guard Insurance Group, Inc., as assignee of Scott

Baxter." 929 F.Supp.2d 227 (W.D.N.Y. 2013). Familiarity with that decision, and with the procedural history of this case, is assumed.

Now before the Court is defendants' motion for summary judgment. For the reasons that follow, the motion is denied.

**FACTS**

The underlying facts are, for the most part, undisputed. On May 15, 2008, while working for his employer, Heartwood Construction ("Heartwood"), Baxter was using a Ryobi BTS20 table saw. Baxter was cutting a piece of wood, making a "rip cut," which the operator's manual defines as "[a] cutting or shaping operation made along the length or with the grain of the workpiece." Dkt. #31-8 at 9. *See* Defendants' Statement of Undisputed Facts ("DSUF") (Dkt. #31-12) ¶ 6; Plaintiff's Opposing Statement of Undisputed Facts ("PSUF") (Dkt. #39) ¶ 6. While Baxter was making a rip cut, his right hand came into contact with the saw blade, and he was badly injured.

Although the saw was sold with a plastic blade guard in place, that guard was not in place at the time of the accident in question. Baxter testified that he "never saw" the guard during his employment at Heartwood. Dkt. #31-6 at 7.

The parties agree that the purpose of the blade guard was to create a barrier between the user's body and the saw blade, although they disagree about whether the blade guard would have prevented Baxter's injury. They also agree that the operator's manual that came with the saw contained numerous warnings about the risks associated with using the saw without the blade guard in place, and that Baxter understood the intended purpose of blade guards in general. DSUF ¶ 12; PSUF ¶ 12; Dkt. #31-6 at 5.

The parties agree that following the accident, as part of its insurance investigation, Guard obtained the model and serial numbers of the saw, but did not physically take custody of it, inspect

it or photograph it. At some point Heartwood disposed of the saw, which has since been destroyed. *See* DSUF ¶ 13; PSUF ¶¶ 13, 15.

Baxter himself never commenced any lawsuit arising out of his injury. After sending Baxter a notice of its intention to file a third-party claim (in response to which Baxter took no action), Guard commenced this case in May 2011. The complaint asserts six causes of action: (1) strict product liability against Techtronic Industries Co., Ltd., Techtronic Industries North America, Inc., One World Technologies, Inc., and Ryobi Technologies, Inc. (collectively "manufacturer defendants"); (2) implied warranty against the manufacturer defendants; (3) negligence against the manufacturer defendants; (4) strict liability against Home Depot; (5) implied warranty against Home Depot; and (6) negligence against Home Depot.

## DEFENDANTS' MOTION

Defendants contend that they are entitled to summary judgment on several grounds. First, they contend that the saw underwent a substantial modification prior to plaintiff's injury, which they claim defeats plaintiff's strict liability and negligence claims. Second, defendants contend that plaintiff's "failure to warn" claims fail because the dangers of using the saw without the guard in place were open and obvious, and because defendants clearly discharged any duty that they had to warn of such dangers. Defendants further argue that plaintiff's implied warranty claim is time-barred. Finally, defendants contend that plaintiff's claims should be dismissed due to the alleged spoliation of the evidence, *i.e.*, the loss or destruction of the saw.

In response to defendants' motion, plaintiff has agreed to dismiss some of its claims. Plaintiff agrees to dismiss the claim to the extent that it is based on a theory of failure to warn. *See* Plaintiff's Mem. (Dkt. #37) at 24. Plaintiff also agrees to dismiss its implied-warranty claim against the manufacturing defendants, based on the four-year statute of limitations applicable to such claims. Plaintiff concedes that the saw was manufactured more than four years prior to the accident, but

contends that Home Depot sold the saw to Heartwood less than four years before the accident, and that the implied warranty claim should therefore survive as to Home Depot. *Id.* at 23.

**DISCUSSION**

**A. "Substantial Modification" Defense**

Defendants argue that under New York law (which the parties agree applies here), the strict liability and negligence claims must be dismissed because the saw underwent a material modification after it was purchased. Specifically, defendants note that the blade guard was not on the saw at the time of the accident. At his deposition in this case, plaintiff testified that he was aware that the saw had originally included a blade guard, but he stated that he had never seen it, and that he did not know how it came to be removed, or whether it had ever been attached in the first place. Dkt. #31-6 at 6, 7, 11.

In support of their motion, defendants cite several New York cases dismissing product liability claims involving injuries that occurred after protective devices had been removed from the products in question. Plaintiff responds that this rule does not apply where the safety device was designed to be easily removable. In fact, defendants' blade guard was designed to be removable for certain types of cuts (though not for the type of cut that plaintiff was performing). *See* Dkt. #31-8 at 30. Plaintiff argues that it is therefore a jury question whether, given the removability of the blade guard, the saw was defectively designed or unreasonably dangerous.

Plaintiff also argues that it is a jury question whether the removal of the guard was a proximate cause of Baxter's injuries. Plaintiff's expert, Darry Robert Holt, P.E., has opined that even if the guard had been in place, the accident still would likely have happened because Baxter's hand would probably have slid under the guard. Dkt. #38 at 5, ¶ 14.

The New York Court of Appeals has held that "a manufacturer of a product may not be cast in damages, either on a strict products liability or negligence cause of action, where, after the product

leaves the possession and control of the manufacturer, there is a subsequent modification which substantially alters the product and is the proximate cause of plaintiff's injuries." *Robinson v. Reed-Prentice Div. of Package Mach. Co.*, 49 N.Y.2d 471, 475 (1980).

New York courts have put an additional gloss on that principle, however, holding that where a safety feature is designed to be removable, a jury question can exist as to whether the product was defectively designed. If a safety device is designed to be removed, even for limited, specified uses of the product, then the removal of the device may not constitute a "material modification" of the product. *See*, *e.g.*, *Lopez v. Precision Papers*, 67 N.Y.2d 871, 873 (1986) (holding that the record presented triable issues of fact concerning whether the subject forklift, as marketed with an attached but removable overhead safety guard, was not reasonably safe for the uses intended or reasonably anticipated by the manufacturer); *Forssell v. Lerner*, 101 A.D.3d 807, 809 (2d Dep't 2012) ("a triable issue of fact exists as to whether the table saw was purposely designed to permit use without the blade guard"). *Cf. Wyda v. Makita Electric Works, Ltd.*, 232 A.D.2d 407, 408 (2d Dep't 1996) (reversing denial of summary judgment for manufacturer, in part because "the safety mechanism here was not designed to be removable," but rather "was defeated by a substantial material alteration"); *see also Alvarado v. Otto Martin Maschinebau Gmbh & Co.*, 236 A.D.2d 345, 346 (2d Dep't 1997) (reversing denial of manufacturer's motion for summary judgment, in part on ground that "[t]he affidavit submitted by the plaintiff's expert offered no opinion with respect to the allegation that the saw's safety devices were designed to be removed").

There is no dispute here that the blade guard was designed to be removed, for "non-through" cuts, and that the operator's manual explains how to remove the guard for such cuts. *See* Dkt. #31-8 at 30. While the manual makes clear that the user should *not* make "through" cuts without the guard in place, *see* Dkt. #31-8 at 21, 22, 27-30, I conclude, under the case law cited above, that the relatively easy removability of the blade guard gives rise to an issue of fact as to whether the saw was defectively designed.

This ruling renders it unnecessary to reach defendants' additional argument that the Court should rule, as a matter of law, that Heartwood's removal of, or failure to install, the blade guard proximately caused plaintiff's injury. "[A] manufacturer of a product may not be cast in damages, either on a strict products liability or negligence cause of action, where, after the product leaves the possession and control of the manufacturer, there is a subsequent modification which substantially alters the product *and* is the proximate cause of plaintiff's injuries." *Robinson v. Reed–Prentice Div. of Package Mach. Co.*, 49 N.Y.2d 471, 475 (1980) (quoted in *Forssell*, 101 A.D.3d at 809) (emphasis added).

Again, if a safety device is *designed* to be removed, then the removal of the device does not necessarily constitute a "substantial modification" of the product. Therefore, a jury could find that it was the defective design of the saw, and not the failure to have the blade guard in place, that proximately caused plaintiff's injury. *See LaPaglia v. Sears Roebuck and Co.*, 143 A.D.2d 173, 177 (2d Dep't 1988) (where "credible testimony ... established that the lawnmower was designed and manufactured with the specific purpose of permitting, if not requiring, the facile removal of the chute deflector[ for certain purposes], the jury was warranted in refusing to absolve the [defendants] of liability for defective design," despite defendants' contention that the chute deflector would have prevented the plaintiff's accident), *app. dismissed in part, denied in part*, 74 N.Y.2d 624 (1989); *see also McGavin v. Herrick & Cowell Co.*, 118 A.D.2d 982, 983 (3d Dep't 1986) (finding questions of fact as to whether modifications of subject machine were substantial and a proximate cause of the injury, so as to preclude summary judgment).

In addition, even if the failure to attach the blade guard did effect a substantial modification of the saw, defendants overstate things when they assert that "[i]f there is evidence to suggest that plaintiff's injury would not have occurred but for the modification, the manufacturer is entitled to summary judgment." Def. Mem. (Dkt. #31-11) at 11. Assuming *arguendo* that the removal, or failure to install, the blade guard constituted a substantial modification of the saw, more is required than "evidence to suggest" that the modification was a but-for cause of the accident. The evidence

- 6 -

must be so one-sided that no reasonable jury could find for the plaintiff; so one-sided, in other words, that defendants "must prevail as a matter of law." *Wrobel v. County of Erie*, 692 F.3d 22, 27 (2d Cir. 2012) (quoting *Kulak v. City of New York*, 88 F.3d 63, 70 (2d Cir. 1996)).

On the record before me, I cannot say as a matter of law that the record is that clear-cut. *See McGavin*, 118 A.D.2d at 983; *see also Jiminez v. Dreis & Krump Mfg. Co.*, 736 F.3d 51, 55 (2d Cir. 1984) (since the "substantial alteration" doctrine exculpates a defendant only where the alteration clearly was the proximate cause of the injury, summary judgment was inappropriate, since there was a question of fact as to proximate cause).

I also note that plaintiff's claims are based in part on defendants' failure to include certain safety features in the design of the saw, such as "SawStop," a feature that is designed to immediately stop a saw blade the instant it comes into contact with human flesh. Plaintiff alleges that had the saw included such features, Baxter's injury would likely not have occurred. This too presents issues of fact. Even if the absence of the blade guard contributed to Baxter's injury, on the record before me I conclude that there are also questions of fact as to whether the failure to incorporate these additional safety features were also proximate causes of his injury. *See Wielgus v. Ryobi Technologies, Inc.*, No. 08 CV 1597, 2012 WL 3643682, at *2-*6 (N.D.Ill. Aug. 23, 2012) (ruling *in limine* that plaintiff's expert Darry Holt would be allowed to testify regarding his opinion that plaintiff's injuries could have been prevented had the saw he was using been equipped with SawStop).

**B. Spoliation**

Defendants also contend that the complaint should be dismissed because the saw no longer exists. Defendants do not contend that Guard destroyed or disposed of the saw–they concede that Heartwood did so–but they argue that they have been so prejudiced by the saw's destruction that dismissal is appropriate. Defendants state that the complaint in this action was filed about two years after the saw was destroyed, and that they never had a chance to inspect it.

Guard responds that it never had custody or control of, or even physical access to the saw, and therefore was not in a position to prevent its destruction. According to Guard, about a week after Baxter's May 15, 2008 accident, Guard obtained some basic information about the accident from Heartwood, as part of a routine insurance investigation. Guard contends that it was not anticipating litigation at that time. Decl. of Rosemarie Farrell (Dkt. #38-4) ¶ 5.

Guard further states that shortly after Guard began its investigation, Heartwood became uncooperative and nonresponsive to Guard's requests for information. According to Guard, it had no communication with Heartwood about the saw after its initial inquiry on May 22, 2008. *Id.* ¶¶ 6, 7. Not until after this lawsuit began did Guard learn that Heartwood had disposed of the saw. *Id.* ¶ 13.

"A federal district court may impose sanctions under Fed. R. Civ. P. 37(b) when a party spoliates evidence in violation of a court order. Even without a discovery order, a district court may impose sanctions for spoliation, exercising its inherent power to control litigation." *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999) (citing *Chambers v. NASCO*, Inc., 501 U.S. 32, 43-45 (1991)) (additional citations omitted).

The Second Circuit defines spoliation as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Id.* A party seeking sanctions for spoliation of evidence must establish three elements: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the [evidence was] destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim ... such that a reasonable trier of fact could find that it would support that claim." *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002) (internal quotation marks omitted).

"The obligation to preserve evidence arises when [a] party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001). The duty requires that

"anyone who anticipates being a party or is a party to a lawsuit ... not destroy unique ... evidence that it knows, or reasonably should know, is relevant in the action." *Zubulake v. UBS Warburg, LLC*, 220 F.R.D. 212, 217 (S.D.N.Y.2003) (internal quotation marks omitted). The "state of mind" requirement varies according to the circumstances of each case. *See Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) (endorsing a "case-by-case approach to the failure to produce relevant evidence," and referencing "a continuum of fault–ranging from innocence through the degrees of negligence to intentionality") (internal quotation marks and citation omitted)

In the case at bar, I find no basis for sanctions due to alleged spoliation, for several reasons: Guard never had control over the evidence; Heartwood was not an agent of Guard; and there has been no showing that, prior to the destruction of the evidence, Guard had any reason to anticipate that litigation was in the offing. I therefore see no reason to penalize Guard for the saw's destruction. *See Adkins v. Wolever*, 692 F.3d 499, 506 (6th Cir. 2012) (affirming district court's conclusion that defendant was not culpable for loss of evidence because he had no control over the evidence); *Rodda v. Joy Mining Machinery*, 15 F.Supp.3d 1156, 1160 n.7 (N.D.Ala. Apr. 15, 2014) ("Sanctions may be imposed against a litigant based on a third party's spoliation of evidence if the third party acted as the litigant's agent in destroying or failing to preserve the evidence) (quoting *Bouve & Mohr, LLC v. Banks*, 274 Ga.App. 758 (2005)).

To the extent that there is any prejudice here, it seems to affect both sides equally. There is no claim that this particular saw was uniquely defective. This is not a manufacturing defect case, but a design defect case. Furthermore, plaintiff does not allege that the safety features that were incorporated into the saw's design failed to work; the claim is that the blade guard was not in place at all (because it was too-easily removable), and that the saw failed to incorporate certain other safety features, such as SawStop technology. Any other saw of the same model would presumably yield the same relevant evidence with respect to these claims. Under these circumstances, the loss of the saw is relatively inconsequential, and does not unduly prejudice one side more than the other. *See Torres-Talavera v. Ford Motor Co.*, 965 F.Supp.2d 220, 223 (D.P.R. 2013) ("Plaintiffs have

dismissed their claims based on manufacturing defects and now proceed only under a design defect theory. As a result, spoliation of the vehicle in this case is not as prejudicial as in a manufacturing defect case because the design defect, by definition, would be found in the entire run of the vehicle model in question") (internal quotation marks omitted).

**C. Statute of Limitations**

Defendant contends that the breach of warranty claim should be dismissed as time-barred. In New York, a cause of action alleging breach of warranty is governed by a four-year statute of limitations. *Schwatka v. Super Millwork, Inc.*, 106 A.D.3d 897, 899 (2d Dep't 2013) (citing U.C.C. § 2-725(1)). Guard concedes that the saw was manufactured more than four years before the accident, but contends that there are issues of fact as to whether defendant Home Depot sold the saw to Heartwood less than four years before the May 15, 2008 accident. Plaintiff therefore agrees that the implied warranty claim should be dismissed as against the manufacturing defendants, but contends that it should remain as against Home Depot.

In support of their motion, defendants cite Baxter's deposition testimony, in which he stated that the saw was in place when he began working at Heartwood in 2006. *See* Dkt. #42 at 2. If that is true, then this action, which was filed on May 11, 2011, would be untimely.

As plaintiff points out, however, Scott Nault, Heartwood's president, testified that as of the day of the accident, May 15, 2008, the saw was "[n]ot more than" a year old. Nault Depo. Tr. at 12 (Dkt. #38-1 at 5). That would mean that the saw was purchased no earlier than May 15, 2007, which might make plaintiff's breach of warranty claim timely.

Since the Court, on a motion for summary judgment, must construe the record in the light most favorable to the non-moving party, *see Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123-24 (2d Cir. 2014), I conclude that this conflicting testimony gives rise to a genuine issue of material fact as to when the saw was sold to Heartwood by Home Depot. *See Pitts v. Northern Telecom, Inc.*, 24 F.Supp.2d 437, 443-44 (E.D.Pa. 1998) (issues of fact regarding date on which computer keyboard

was delivered by defendant precluded summary judgment for defendant on plaintiff's warranty claim), *aff'd*, 211 F.3d 1262 (3d Cir. 2000).  Defendants' motion to dismiss the breach of warranty claim as time-barred is therefore denied.

## CONCLUSION

Defendants' motion for summary judgment (Dkt. #31) is granted in part and denied in part. Plaintiff's claims are dismissed to the extent that they are premised on theory of failure to warn. Plaintiff's second cause of action, asserting a claim of implied warranty against defendants Techtronic Industries Co., Ltd., Techtronic Industries North America, Inc., One World Technologies, Inc., and Ryobi Technologies, Inc., is also dismissed.  In all other respects, defendants' motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
　　　　January 23, 2015.